**Wisam TOBIA, Nabil Tobia, Danyal Saad, Farat Ramou, Slewa Habib, and Shamer Shamoo, Petitioners,**

v.

**Charles C. SAVA, District Director of the Immigration and Naturalization Service, or Such Other Person, If Any, Who May Have Custody of Petitioners, Respondent.**

No. 82 Civ. 5076 (CBM).

United States District Court,
S.D. New York.

Sept. 24, 1982.*

Barst, Mukamal & Babitt by Roy Babitt, Ronald J. Fleury, Martin L. Rothstein, New York City, for petitioners.

John S. Martin, Jr., U.S. Atty. by Thomas H. Belote, Asst. U.S. Atty., New York City, for respondent.

MEMORANDUM OPINION

MOTLEY, Chief Judge.

Petitioners, four excludable aliens being detained by the Immigration and Naturali-

---

*\* Final Typed Copy of Memorandum Opinion*   *Filed September 15, 1982.*

zation Service (INS), seek a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioners seek release from detention pending their appeals of the denials of their applications for political asylum in this country. Petitioners have all been denied parole by the District Director of the INS.

█ This action was commenced by Order to Show Cause on August 4, 1982. A hearing was held before this court on August 13, 1982. The habeas corpus jurisdiction of this court encompasses the jurisdiction to review parole decisions of the District Director of the INS. *Bertrand v. Sava,* 684 F.2d 204, 210 (2d Cir.1982). For the reasons given below, petitioners' application for a writ of habeas corpus is denied.

## BACKGROUND

Petitioners are Christian Iraqi nationals who arrived at John F. Kennedy Airport, New York, in January and February, 1982, with valid Iraqi passports but without visas to enter the United States. All have claimed eligibility for political asylum based upon fear of persecution should they return to Iraq. Iraq is a Moslem country in which Christians are a minority. Petitioners claim that they will be subject to both religious and political persecution if they are returned to Iraq. The assertion has also been made that, in remaining outside their country for longer than allowed, petitioners have placed themselves in jeopardy of being hanged upon their return.

1. At the commencement of this action all six named petitioners were in detention and seeking release. However, Wisam Tobia and Nabil Tobia were subsequently released from detention when it became apparent that the visa petition filed on their behalf had been filed by a brother, and that they were, therefore, eligible for parole. *See* note 4 *infra.* We therefore address herein only the continued detention of the remaining four petitioners.

2. Petitioners allege that detention is only proper until such time as they are given a hearing before an immigration judge. Although it is true that detention cannot constitutionally be continued indefinitely, the court finds little logic in the contention that once an unadmitted alien has been found to be excludable, he

Petitioners concede that they are all excludable aliens but assert that respondent erred in failing to grant them parole while they await the final determinations on their applications for political asylum.

Petitioners' factual allegations have been carefully reviewed by this court. The situation in which these men find themselves, incarcerated for over six months for their attempts to enter this country, is doubtless a far cry from that which they anticipated finding upon reaching our shores. Nevertheless, the role of this court, whatever its sympathies, is restricted in cases such as this. It is not the underlying merits of petitioners' claims for asylum which are before the court but, rather, the denial of parole to petitioners pending the appeals of their application for asylum.

## DISCUSSION

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* provides that any alien who arrives at our border who "may not appear ... to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer." 8 U.S.C. § 1225(b). An immigration judge then decides whether the alien should be formally admitted or excluded and deported. 8 U.S.C. § 1226. Appeals from the decisions of an immigration judge may be made to the Board of Immigration Appeals. 8 C.F.R. § 236.7. Throughout the entire process, the alien is held in detention[2] unless parole is granted pursuant to 8 U.S.C. § 1182(d)(5).[3]

should be given more freedom than when his excludability was still open to question.

3. 8 U.S.C. § 1182(d)(5)(A) reads, in pertinent part, as follows:

The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall

Under the terms of 8 U.S.C. § 1182(d)(5), the parole of aliens is a discretionary power vested in the Attorney General. The Attorney General has delegated this power to the INS District Directors. 8 C.F.R. § 212.5. The District Directors are assisted in the exercise of this discretion by certain guidelines[4] issued by the Commissioner of the INS pursuant to 8 U.S.C. § 1103 and recently published as an interim rule in the Federal Register. 47 Fed.Reg. 30,045 (1982) (to be codified in 8 C.F.R. § 212.5).

Petitioners challenge the District Director's denial of their parole requests asserting, *inter alia,* that respondent 1) failed and refused to exercise his discretion or independent judgment, 2) failed to advise petitioners as to the factors he considered and the reasons for the denial of parole, and 3) was motivated by improper considerations and relied upon impermissible factors in determining not to grant petitioners' parole requests.

■ 1) Petitioners' allegation that respondent, as delegee of the Attorney General's discretionary powers, failed to exercise his discretion must fail. The record in this instance indicates that counsel for three of the petitioners were advised by telephone that petitioners' parole requests had been denied because petitioners did not qualify for parole under the guidelines (Aff. of James Foster dated August 18, 1982, at 6). The fourth petitioner, Mr. Shamoo, was advised in writing that parole was denied because there were no emergent or public interest reasons justifying his release. Where the record includes evidence that the District Director affirmatively acted to deny each petitioner's parole application, and includes evidence of the criteria used in deciding upon those denials, the record "permits no conclusion other than that Sava

did exercise his discretion...." *Bertrand v. Sava,* at 214.

2) In *Bertrand,* the United States Court of Appeals for the Second Circuit set forth the narrow range of inquiry available to this court in reviewing the discretionary decisions of the Attorney General:

[A]s long as the Attorney General exercises his broad discretion ... his decision may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors ... and too little to others. Indeed, section 1182(d)(5) permits the Attorney General to deny parole to all or to certain groups of unadmitted aliens *on the ground that he finds no emergent or public interest reasons justifying their release* on parole. The discretion may not be exercised to discriminate ... or to depart without rational explanation from established policies.... But the Attorney General's exercise of his broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary.

*Bertrand v. Sava,* at 212–13 (citations omitted) (emphasis added).

■ It is clear from the language emphasized above that respondent was not required to give petitioners a detailed explanation as to the reasons for the parole denials or the factors upon which he relied.

3) Petitioners claim that their parole denials resulted from improper motivations and from the consideration of improper factors. In this regard they assert that the District Director "was motivated by a new Detention policy of the Service," a policy which was adopted "to overcome a possible aura of discrimination against Haitians

---

continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

4. The guidelines, in essence, provide that parole decisions should be based on consideration of whether:
   (a) the alien has a serious medical condition;
   (b) the alien is pregnant, or is a juvenile;
   (c) the alien has an eligible parent, spouse, child or sibling who has filed a visa petition on the alien's behalf;
   (d) the alien will be a witness in a judicial, administrative or legislative proceeding, or is subject to prosecution;
   (e) continued detention is against the public interest as determined by the District Director.

...," that the criteria previously used by respondent should have been employed, and that the probable success of their asylum claims was a factor in the parole decisions and should not have been considered [5] (Petitioners' Memorandum of Law at 13, 14).

Petitioners' allegations as to the malevolent intent behind the adoption of the guidelines go not to respondent's exercise of his discretion, but to the validity of the guidelines themselves. Whether the guidelines themselves were, in fact, adopted for improper reasons, is unclear. However, petitioners have not advanced sufficient facts to support such an allegation. Accordingly, the court does not reach that issue here.

Petitioners, however, also allege that the application of the guidelines was a departure without rational explanation from established policies and, as such, cannot be "bona fide" within the meaning of *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683. *See Bertrand v. Sava*, at 212. The memorandum by which the guidelines were initially disseminated includes a brief analysis of the legislative history and the congressional intent behind the parole provision. The memorandum was sent to respondent by the Regional Commissioner of INS, and stated that the guidelines should be utilized in the consideration of all parole requests. The guidelines were received by respondent approximately two weeks prior to the arrival at New York of the first of the petitioners. Thus, the application by respondent of the guidelines, which facially appeared to be legitimate, does not appear to have been without rational explanation.

Petitioners point out that respondent's established policy was to consider parole requests in light of a different set of criteria: documentation, likelihood of success of asylum claims, age, family ties and sponsorship [6] (Petitioners' Memorandum of Law at 11–12). Although petitioners object to respondent's use of criteria other than these, they also suggest that it was improper for respondent to utilize the guidelines and consider the likelihood of the success of their asylum claims, a factor not included within the guidelines.

■ This assertion, on first blush, appears to be valid. However, closer inspection reveals that the District Director may, indeed, utilize his own criteria within the scope of the guidelines. The guidelines expressly provide that a District Director may parole aliens "whose continued detention is not in the public interest *as determined by the district director*", provided there is neither a security risk nor a risk of absconding. 47 Fed.Reg. 30,045 (to be codified at § 212.-5(a)(2)(b)) (emphasis added). This provision permits the District Director to rely upon the considerations listed in the guidelines, or to make his own determination. Notably, too, it requires the District Director to assure that there is no risk of absconding. It follows, therefore, that the existence or use of criteria in addition to those listed in the guidelines does not, of itself, constitute a departure from the guidelines.

Although respondent had no burden on the matter, he did proffer evidence to this court that each of the petitioners failed to qualify for parole under the terms of the guidelines alone.[7] The evidence in this case

---

**5.** Counsel for petitioners points out that the merits of petitioners' asylum claims are not matters confided to the discretion of the District Director, and asserts that consideration of these claims was improper (Petitioners' Memorandum of Law at 22). However, in criticizing the District Director's use of the guidelines, petitioners assert that the established criteria which should have been employed included the "likelihood of success of the alien's political asylum claim." *Id.* at 11–12. The court notes that it does not appear that respondent independently assessed the merits of petitioners' asylum claims but merely took into account the advisory opinions submitted on the subject by the Department of State.

**6.** The court notes that, although Charles C. Sava, the District Director, is the respondent in this case and the party to whom prior policies are attributed, the parole decisions as to petitioners were made by James Foster, to whom that power was delegated by Mr. Sava in early December, 1981.

**7.** Petitioner Saad has stated that his sister is a lawful resident alien residing in Detroit. According to the guidelines, the filing of a visa

also suggests that respondent looked to both the guidelines and to other criteria in making his determination (*see* Affidavit of James Foster dated August 12, 1982, at 8–10). It does not appear to this court that petitioners would have qualified for parole under either set of standards. In any event, this court will not substitute its judgment for that of respondent. It simply points out that respondent's determinations are neither irrational under either set of standards alone nor on both together.

In sum, petitioners have failed to sustain the heavy burden of showing that respondent's discretion was exercised either irrationally or in bad faith or that it was not exercised at all. The unadmitted alien must submit strong proof before this court can provide habeas corpus relief in circumstances such as these. On the facts before the court in this action such relief cannot be granted.

The petition for a writ of habeas corpus is denied.

application by his sister on his behalf would, apparently, bring Saad within the guidelines

and render him eligible for parole.