Hadi **BEDREDIN (A27 493 336), Samira Bekit (A27 493 337), and Lucia Kabakoulak (A27 491 390), Petitioners,**

v.

**Charles C. SAVA, District Director, Immigration and Naturalization Service, New York, New York, Respondent.**

No. 85 Civ. 8627 (GLG).

United States District Court, S.D. New York.

Jan. 30, 1986.

Omar Z. Ghobashy, New York City, for petitioners.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City (Jorge Guttlein, Sp. Asst. U.S. Atty., of counsel), for respondent.

GOETTEL, District Judge:

The petitioners are being held in detention by the respondent pursuant to section 235(b) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1225(b) (1982) (the "Act"). All have applied for parole pending exclusion proceedings and adjudication of their applications for political asylum. The respondent has denied their requests for parole and the petitioners now seek review of that decision by writ of habeas corpus pursuant to 28 U.S.C. §§ 2242 & 2243 (1982).

## I. BACKGROUND

Although all three petitioners request the same relief, the facts underlying their situations differ.

### A. *Hadi Bedredin and Samira Bekit*

Petitioners Hadi Bedredin and Samira Bekit are, respectively, husband and wife. They are natives of Ethiopia who were refugees in Sudan. On September 19, 1985, they attempted to enter the United States with fraudulent travel documents[1] and without valid immigrant visas. They were detained by the Immigration and Naturalization Service ("INS") pursuant to section 235(b) of the Act.[2] On September 20,

---

1. According to the respondent, Bedredin and Bekit hold altered Sudanese refugee travel documents. Counsel for the petitioners claims that they hold United Nations refugee passports. We need not rule on this factual issue. Immigration officials may detain aliens whose travel documents appear questionable on their face. 8 C.F.R. § 235.3(b) (1985); *see infra* p. 632.

2. Section 235(b) of the Act states in pertinent part, "Every alien ... who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer." 8 U.S.C. § 1225(b) (1982).

1985, their attorney wrote to the INS requesting parole for Bedredin and Bekit, noting that they were applying for political asylum. By letter dated October 2, 1985, Benjamin Perlitsch, Deputy Assistant Director of INS in New York, denied parole stating,

> The [petitioners] arrived in the United States on September 19, 1985 and presented altered travel documents. In view of the extraordinary means by which these aliens sought entry into this country and that there are no emergent reasons nor would it be in the public interest to parole them, your request is denied.

Respondent's Return and Declaration, Exhibit E.

Bedredin and Bekit challenge this decision. They claim that the respondent's denial of their request for parole will unlawfully subject them to an extended period of incarceration pending determination of their admissibility into the United States. They state that even if they are ordered excluded, they cannot be returned to the country from which they came and would thus be incarcerated indefinitely, in violation of their constitutional rights. Petitioner Bekit has recently added the claim that she is pregnant and that, under the applicable parole guidelines, she should be paroled.

### B. *Lucia Kabakoulak* [3]

Petitioner Kabakoulak is a native of Syria who lived most of her life in Lebanon. On September 13, 1985, she arrived in the United States with her mother and younger sister. All three were denied admission into the country because they were attempting to enter with invalid immigrant visas.[4] Kabakoulak's sister is a minor and was paroled pending exclusion hearings. *See* 8 C.F.R. § 212.5(a)(2)(ii) (1985). There being no adult relative not in detention to supervise the paroled minor child,[5] Kabakoulak's mother was paroled to accompany the young girl. *See* 8 C.F.R. § 212.-5(a)(2)(ii)(B) (1985). Kabakoulak, however, was held in detention.

Kabakoulak was afforded an exclusion hearing at which she was represented by counsel. At that time, she made no request for political asylum, and, on October 4, 1985, the immigration court issued a final order of exclusion and deportation. On October 25, 1985, Kabakoulak, represented by different counsel, moved to reopen her exclusion proceeding based upon her application for political asylum dated October 23, 1985. Counsel also asked that she be paroled. On November 1, 1985, Deputy Assistant Director Perlitsch, acting for the respondent, denied Kabakoulak's parole request because she had attempted to enter the country using altered travel documents and because she was then under a final order of exclusion. Respondent's Return and Declaration, Exhibit T. On November 14, 1985, Immigration Judge Francis J. Lyons granted Kabakoulak's motion to reopen her exclusion proceedings in order to consider her belated application for political asylum.[6]

Kabakoulak has renewed her request for parole but the respondent has declined to parole her at this time. Kabakoulak challenges that decision and claims entitlement to parole because of ill health and the fact that her father, an alien admitted to the United States on a visitor's visa, has applied for permanent resident alien status and political asylum and has included his

---

**3.** We note that some documents refer to this petitioner as "Lousia" Kabakoulak.

**4.** The record before us shows that the petitioner's mother obtained these visas through a Lebanese travel agent in Nicosia, Cyprus, after being denied visas by the United States Embassy in Nicosia some months earlier.

**5.** The respondent does not explain why the minor child was not paroled into her father's care.

He is apparently an alien not in detention, since he is alleged to be living in Connecticut and seeking permanent resident alien status. It is possible, however, that he could not be located to sponsor the minor. *See* 8 C.F.R. § 212.-5(a)(2)(ii)(B) (1985).

**6.** This renders moot that part of the respondent's denial of parole based on Kabakoulak being under a final order of exclusion.

entire family in his petition. She also contends that, if excluded, she cannot be returned to her native country and will thus be subjected to incarceration for an indeterminate time in violation of her constitutional rights.

As discussed below, the broad discretion granted to the respondent and the limited scope of judicial review of parole decisions mandate the dismissal of the instant petition as to all three petitioners.

## II. DISCUSSION

### A. *Detention and Parole Standards*

Section 235(b) of the Act provides that every alien seeking entry into the United States who does not appear to be clearly and beyond a doubt entitled to be admitted shall be detained pending an exclusion hearing. 8 U.S.C. § 1225(b) (1982). Pursuant to 8 C.F.R. § 235.3(b) (1985), any alien who arrives with documentation that appears on its face to be false or altered shall be detained.

The Attorney General has broad discretion to temporarily parole aliens detained pursuant to section 235.3(b) of the regulations. 8 U.S.C. § 1182(d)(5) (1982). The Attorney General has delegated this authority to the local INS district directors. *See* 8 C.F.R. § 212.5 (1985). However, temporary parole is the exception to rule of detention. *Ledesma-Valdes v. Sava*, 604 F.Supp. 675, 680 (S.D.N.Y.1985) (Weinfeld, J.). An unadmitted alien has no constitutional right to parole. *Id.; see Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) (an alien seeking admission into the United States has no constitutional rights regarding his application). The district director may grant temporary parole "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A) (1982).

The Code of Federal Regulations state that "[t]he parole of aliens who have serious medical conditions in which continued detention would not be appropriate would generally be justified by 'emergent reasons.'" 8 C.F.R. § 212.5(a)(1) (1985). The regulations then define five groups that would "generally come within the category of aliens for whom the granting of the parole exception would be 'strictly in the public interest', provided that the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(a)(2) (1985). The first four groups are (1) pregnant women; (2) juveniles, including, in certain circumstances, an adult accompanying a juvenile; (3) certain aliens who have close relatives in the United States; and (4) aliens who will be witnesses in official proceedings in the United States. The fifth category simply allows parole of "aliens whose continued detention is not in the public interest as determined by the district director." 8 C.F.R. § 212.5(a)(2)(v) (1985).

The petitioners argue that, pending exclusion proceedings and adjudication of their applications for political asylum, they are eligible for parole under the guidelines of 8 C.F.R. § 212.5. The respondent's decision to deny them parole was, they assert, an abuse of discretion.

### B. *Judicial Review of Parole Decisions*

The case of *Bertrand v. Sava*, 684 F.2d 204 (2d Cir.1982), provides the standard for judicial review of INS discretionary decisions in this circuit. In considering a challenge to the district director's denial of parole, the Second Circuit held that federal courts have the power to review INS decisions to deny parole to unadmitted aliens through the mechanism of habeas corpus petitions. *Id.* at 210. However, this power is narrowly circumscribed because of the legislature's plenary power over the admission of aliens. *Id.* at 211–12; *see Kleindienst v. Mandel*, 408 U.S. 753, 769–70, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). In considering an alien's habeas corpus petition,

> the Attorney General's exercise of his broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or exercised irrationally or in bad faith is a heavy one and rests at all

times on the unadmitted alien challenging denial of parole.

*Bertrand v. Sava, supra,* 684 F.2d at 212–13.

In the instant case, the stated reason for denying parole was that the petitioners attempted to enter the United States with improper (*i.e.,* fraudulent) visas or travel documents. As Judge Leisure recently noted in *Singh v. Nelson,* 623 F.Supp. 545 (S.D.N.Y.1985), "By refusing to parole undocumented excludable aliens, the Service is attempting to discourage people from entering the United States without permission and serves notice that aliens will not be able to circumvent the procedures governing lawful immigration to this country." *Id.* at 556. This goal provides a rational basis for denying parole to aliens such as the petitioners who attempt to side-step the procedures for legal admission to this country. The petitioners contend, however, that the district director abused his discretion by failing to find "emergent reasons" or "reasons strictly in the public interest" that warrant their parole.

### C. *The Petitioners' Claims*

1. Eligibility For Parole Under 8 C.F.R. § 212.5.

The petitioners assert that they qualify for parole under the guidelines of 8 C.F.R. § 212.5, which provide as follows:

(a) In determining whether or not aliens who have been or are detained in accordance with § 235.3(b) or (c) will be paroled out of detention, the district director should consider the following:

(1) The parole of aliens who have serious medical conditions in which continued detention would not be appropriate would generally be justified by "emergent reasons";

(2) The parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest", provided that the aliens present neither a security risk nor a risk of absconding:

(i) Women who have been medically certified as pregnant;

(ii) Aliens who are defined as juveniles. . . . When it is determined that such juvenile should be paroled from detention, the following guidelines should be followed:

(A) Juveniles may be released to a relative (brother, sister, aunt, uncle) not in Service detention who is willing to sponsor a minor and the minor may be released to that relative notwithstanding that he has a relative who is in detention.

(B) If a relative who is not in detention cannot be located to sponsor the minor, the minor may be released with an accompanying relative who is in detention.

(iii) Aliens who have close family relatives in the United States (parent, spouse, children, or siblings who are United States citizens or lawful permanent resident aliens) who are eligible to file, and have filed, a visa petition on behalf of the detainee;

(iv) Aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States;

(v) Aliens whose continued detention is not in the public interest as determined by the district director.

8 C.F.R. § 212.5 (1985). We must remind the petitioners that they are not guaranteed parole based on these criteria. Section 212.5 merely provides conditions under which the district director *may* exercise his discretion to grant parole.

Although not specifically alleged, we assume all three petitioners maintain that they should be paroled because their "continued detention is not in the public interest. . . ." 8 C.F.R. § 212.5(a)(2)(v) (1985). However, the petitioners have not shown why it would be in the public interest to parole them. The heavy burden of proving that the district director abused his discretion in denying parole rests on the petitioners. *Bertrand v. Sava, supra* 684 F.2d at 213. This Court may upset his decision only if he acted "irrationally" or "in bad

faith." *Id.* We do not find that to be the case here.

### a. Bedredin and Bekit

Neither Bedredin nor Bekit appear to come within any of the categories of aliens for whom parole would be "strictly in the public interest," 8 C.F.R. § 212.5(a)(2), nor do they have any "serious medical conditions" that would justify parole for "emergent reasons" under section 212.5(a)(1). Petitioner Bekit claims to be pregnant which, if true, would probably result in parole pursuant to 8 C.F.R. § 212.5(a)(2)(i). However, recent medical tests show she is not pregnant.

### b. Kabakoulak

■ Petitioner Kabakoulak attempts to bring herself within the provisions of 8 C.F.R. § 212.5(a)(2)(iii) because her father is currently residing in the United States. He apparently entered this country on a visitor's visa and is living in Hartford, Connecticut. He has sought preferential treatment, pursuant to 8 U.S.C. § 1153(a)(6) (1982), in adjusting his status to that of a permanent resident alien, and has applied for political asylum for himself and his family. However, since he is not currently a lawful permanent resident alien, Kabakoulak is not eligible for parole pursuant to 8 C.F.R. 212.5(a)(2)(iii).

[2] Kabakoulak next contends that she should be paroled because two other members of her family were paroled. Counsel for Kabakoulak notes that whole families have been paroled once one member of the family is paroled.[7] This argument is unavailing. Parole is discretionary and a grant of parole to one, two, or twenty members of a family in one situation does not guarantee parole in another case.

Kabakoulak also purports to have several illnesses for which she has received medical attention. Despite numerous medical examinations, no definitive diagnosis has yet been forthcoming; in the meantime, Deputy Assistant Director Perlitsch has declined to grant her parole. Respondent's Declaration, January 16, 1986, Exhibit B. It is for the district director, not this Court, to evaluate the seriousness of a detainee's medical condition and determine if parole is warranted. The Court may not substitute its judgment for that of the district director. *Bertrand v. Sava, supra,* 684 F.2d at 217. However, the Court may intervene if the district director abuses or fails to exercise his discretion. *Ledesma-Valdes v. Sava, supra,* 604 F.Supp. at 680.

■ We are troubled by the fact that, while impliedly asserting that Kabakoulak has no serious medical condition, the respondent nevertheless continues to schedule further specialized medical examinations. By letter dated January 15, 1986, Deputy Assistant Perlitsch advised that Kabakoulak was "to be further examined"

---

7. Petitioners' counsel relies on the case of *Abu Laban v. Sava,* 564 F.Supp. 30 (S.D.N.Y.1982). That case provides no authority for paroling these petitioners. There, two Palestinian aliens arrived at JFK airport with their father, all without valid visas to enter the United States. After examining their documents, immigration officials ordered them returned to their port of embarkation on the next available flight. While awaiting departure, the father suffered an apparent heart attack and both sons were paroled for one week on humanitarian grounds to accompany their father to the hospital. After failing to appear voluntarily for exclusion hearings, the two sons were apprehended and placed in detention. They applied for political asylum and requested parole pending exclusion proceedings. Parole was denied. On petition for writ of habeas corpus challenging denial of parole, the district court refused to grant the writ, finding that the district director did not abuse his discretion in denying parole because of the likelihood that the Abu Labans would abscond. Counsel's reliance on this case is misplaced. He has not presented any facts comparable to those in *Abu Laban v. Sava,* that warrant parole on humanitarian grounds. Furthermore, although the district director did not rely on the likelihood of these petitioners absconding in denying them parole, the respondent notes, with respect to Kabakoulak, that her mother and sister failed to appear for scheduled hearings and that she might do the same.

The petitioners' counsel contends that paroling entire families in some cases and not others "violates the parole policy." Replevin at 3. We find, however, that these variances tend to confirm that the district director is exercising his discretion and giving individual consideration to each situation. *See Jean v. Nelson,* — U.S. —, 105 S.Ct. 2992, 2999, 86 L.Ed.2d 664 (1985).

on January 22, 1986. Respondent's Declaration, Exhibit B. On January 27, we were advised by respondent's counsel that additional examinations have now been scheduled for February 19, and March 3, 1986. The respondent may not defer reconsidering this petitioner's request for parole indefinitely. *See Paulis v. Sava,* 544 F.Supp. 819, 821 (S.D.N.Y.1982). His inaction may amount to a failure to exercise discretion, and raises a question of his good faith in denying parole in the interim. At present, we cannot say that the district director has abused his discretion in denying Kabakoulak parole based on illness. However, this decision is without prejudice to the filing of a new writ if the respondent fails to issue an updated decision on Kabakoulak's parole within thirty days after the March 3 medical examination.

2. Detention for Extended Time is Unlawful.

The petitioners next argue that the district director abused his discretion in denying them parole because they are likely to be detained indefinitely. They suggest that such "indefinite" detention could occur both prior to, and following, a final order of exclusion.

a. Parole pending asylum adjudication.

█ The petitioners have all applied for political asylum because they allegedly fear returning to their native countries.[8] Those applications have not yet been processed, but there is no indication that they will be pending "indefinitely." [9] *See Paulis v. Sava, supra,* 544 F.Supp. at 821 (S.D.N.Y. 1982) ("[T]he Constitution imposes some outer limit on the length of time that [an alien] can be detained while the government processes his case."). The respondent detained the petitioners pending decision on their asylum requests because they had attempted to enter the country using fraudulent documents. This constitutes a "facially legitimate and bona fide reason" for denying parole, *Kleindienst v. Mandel, supra,* 408 U.S. at 770, 92 S.Ct. at 2585, and, therefore, was not an abuse of discretion. *See Jean v. Nelson,* 727 F.2d 957, 977 (11th Cir.1984) (en banc), *aff'd,* — U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

b. Parole after final exclusion order.

█ The petitioners contend that, if asylum is denied and they are ordered excluded, they may be detained indefinitely, in violation of their constitutional rights, because no country will accept them.[10] Although this argument may eventually raise a serious and controversial issue,[11] it is not

8. Kabakoulak is a Christian Syrian who has lived most of her life in Lebanon. She claims she fears religious persecution if returned to Syria. Bedredin and Bekit claim to be refugees from Ethiopia and, therefore, stateless persons. The merits of the political asylum applications are not before us.

9. The petitioners initially expressed a fear that they would be deported while their asylum applications were pending. However, the government has represented that it will not deport the petitioners while their asylum applications are pending. *See* Respondent's Memorandum of Law in Opposition at 3 n. *.

10. Counsel for the petitioners cites *Rodriguez Fernandez v. Wilkinson,* 505 F.Supp. 787 (D.Kan. 1980), *aff'd,* 654 F.2d 1382 (10th Cir.1981), in support of this argument. Unfortunately, that case predates the amendments to the federal regulations abandoning a very lenient parole policy in favor of detaining aliens who cannot make a prima facie showing of entitlement to enter this country. *See Jean v. Nelson,* — U.S. ——, 105 S.Ct. 2992, 2995, 86 L.Ed.2d 664

(1985). The case, therefore, is of no precedential value here.

11. *See, e.g.,* Case Comment, *The Indefinite Detention of Excludable Aliens: Palma v. Verdeyen,* 16 N.Y.U.J.Int'l L. & Pol. 119 (1983) (criticizing a Fourth Circuit decision that approved indefinite detention of excluded aliens who could not be returned to their country of origin); Note, *Statutory and Constitutional Limitations on the indefinite Detention of Excluded Aliens,* 62 B.U. L.Rev. 553 (1982) (arguing that indefinite detention of excluded aliens is an improper permanent alternative to deportation without showing that the alien would pose a serious threat to the community); *but see* Note, *The Indefinite Detention of Excluded Aliens: Statutory and Constitutional Justifications and Limitations,* 82 Mich.L. Rev. 61 (1983) (concluding that indefinite detention of undeportable excluded aliens is constitutionally permissible under certain circumstances).

**636**

presently ripe for consideration. Asylum has not yet been denied. If the petitioners are ultimately ordered excluded and deported, the Act requires the Attorney General to effect their departure within six months. 8 U.S.C. § 1252(c) (1982). At that time, the Attorney General may, in his discretion, release an alien on posting of a bond or such other conditions as may be prescribed. *Id.; see Singh v. Nelson, supra,* at 551–52. If ordered deported, the petitioners may renew their petition for habeas corpus relief pursuant to 8 U.S.C. § 1105a(a)(9) (1982). Since the petitioners' asylum applications are still pending, it is inappropriate for us to consider anything beyond the question of whether the district director abused his discretion in denying parole pending decision on the petitioners' exclusion.

   3.  Discrimination Based on National Origin.

   The petitioners claim their detention is in retaliation for seeking political asylum and that they are being discriminated against because of their national origin.[12] The petitioners' counsel supports this allegation with conclusory contentions about INS policy and by recounting his personal experiences in other immigration cases. The record in the instant case does not support the accusations of retaliation or discrimination.[13]

**III.  CONCLUSION**

   For the reasons discussed above, we find that the district director did not abuse his discretion in refusing to parole the petitioners. Consequently, we must dismiss the instant petition in its entirety. As to petitioner Kabakoulak, this dismissal is with-

out prejudice to renewal should the respondent fail to issue a revised decision regarding her parole for medical reasons by April 2, 1986.

   SO ORDERED.

---

12.  The Supreme Court recently declined to consider whether a denial of parole because of race or national origin violates the fifth amendment of the Constitution. The Court affirmed the Eleventh Circuit's decision to remand the case to the district court for decision on statutory grounds, but held that the circuit court should not have reached the constitutional issue. *Jean v. Nelson,* —— U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

13.  The petitioners' claims of discrimination are somewhat obscured by their attorney's overzealous and somewhat incomprehensible presentation. We have attempted to decifer and address each allegation. However, even if we have failed to perceive all intended arguments, we are nevertheless convinced that the record before us shows no abuse of the district director's discretion in denying parole at this time.