Roberto MEJIA–RUIZ, A 30
670 149, Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 94 CV 5179 (FB).

United States District Court,
E.D. New York.

Dec. 16, 1994.

**160**

Michael P. DiRaimondo, New York City, for petitioner.

Zachary W. Carter, U.S. Atty., Brooklyn, NY (Scott Dunn, Asst. U.S. Atty., of counsel), for respondent.

### MEMORANDUM AND ORDER

BLOCK, District Judge:

Petitioner Roberto Mejia–Ruiz ("Mejia–Ruiz"), an alien,[1] seeks a writ of *habeas*

*corpus* directing respondent Immigration & Naturalization Service ("INS") to parole him during the pendency of an "exclusion proceeding" seeking his removal from the United States.[2] He claims that the INS (i) violated his due process rights by denying his application for parole without affording him a hearing and (ii) abused its discretion by acting arbitrarily and capriciously in denying parole. The INS not only vigorously contests these claims, but argues that Mejia–Ruiz could not, in any event, receive parole because of his status as an "aggravated felon." For the reasons set forth below, the petition is denied.

## I.

### *FACTS AND PROCEDURAL HISTORY*

Mejia–Ruiz is a native and citizen of the Dominican Republic. He entered the United States in 1971 as a lawful permanent resident alien. He has a United States citizen wife and two United States citizen children. He has no family in the Dominican Republic.

On April 13, 1989, Mejia–Ruiz was convicted in New York State court for the sale of a controlled substance (cocaine).[3] He was sentenced to prison for a term of two to four years for this conviction, of which he served approximately eighteen months. Based upon the conviction, on May 13, 1991 the INS instituted deportation proceedings. On May 27, 1993, an immigration judge ordered Mejia–Ruiz deported and denied his request for a waiver of deportation, concluding that there existed no evidence of rehabilitation. Mejia–

1. An " 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). An alien may become "lawfully admitted for permanent residence," which means that the alien has attained the "status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." *Id.* § 1101(a)(20).

2. An alien is subject to a "deportation proceeding" under section 241 of the Immigration and Naturalization Act of 1952 (the "Immigration Act"), 8 U.S.C. § 1251, where he or she has been admitted into the United States. By contrast, an alien—whether a returning lawful permanent resident or a first time arrival—is subject to an "exclusion proceeding" under section 212 of the Immigration Act, 8 U.S.C. § 1182, where he or she seeks entry or re-entry, as the case may be, into the United States. "Deportation proceedings are generally more favorable to the alien than exclusion proceedings." *Correa v. Thornburgh*, 901 F.2d 1166, 1171 n. 5 (2d Cir.1990).

3. The INS claims that Mejia–Ruiz has a number of other prior convictions and arrests, including convictions for criminal possession of a weapon and possession of narcotics. Declaration of Assistant United States Attorney Scott Dunn ¶¶ 4–8.

Ruiz thereafter filed an administrative appeal to the Board of Immigration Appeals ("BIA").

On April 27, 1994, while this appeal was pending, Mejia–Ruiz left the United States for the Dominican Republic, where he stayed for approximately one month. On May 24, 1994, upon his attempted return to the United States, he was subjected to an exclusion proceeding because he was not clearly admissible to enter the United States due to his conviction for a drug-related offense and the order of deportation.[4] On August 26, 1994, the BIA dismissed Mejia–Ruiz's appeal of the deportation order pursuant to 8 C.F.R. § 3.4 because he had made a departure from the United States during the pendency of the appeal. Section 3.4 provides in pertinent part:

> Departure from the United States of a person who is the subject [of] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a *withdrawal of the appeal,* and the initial decision in the case *shall be final to the same extent as though no appeal had been taken.*

(Emphasis added.)

On September 16, 1994, Mejia–Ruiz appealed the BIA's dismissal of his appeal of the deportation order to the Second Circuit, contending that the promulgation of section 3.4 violated the Administrative Procedures Act because the INS purportedly published the section without providing notice and an opportunity for public comment as required under 5 U.S.C. § 553.[5] This appeal is still pending.

Meanwhile, on August 18, 1994, after a hearing, an immigration judge determined and ordered that Mejia–Ruiz should be "excluded." On August 25, 1994, Mejia–Ruiz appealed the exclusion order to the BIA. This appeal also is still pending.

On July 27, 1994, shortly before Mejia–Ruiz's hearing before the immigration judge to determine whether he should be "excluded," he filed with the INS district director a letter requesting parole during the pendency of the exclusion proceeding. The letter, which was prepared by his attorney, stated that Mejia–Ruiz's wife and two children are United States citizens and that his mother, father and six siblings are lawful permanent residents of the United States. It also stated that Mejia–Ruiz had been employed full time since March 1990, which allowed him to support his wife and children. The letter did not request a hearing on the issue of whether Mejia–Ruiz should receive parole. On August 26, 1994, an INS assistant district director denied the parole request. It is from this denial that Mejia–Ruiz now seeks *habeas corpus* relief.

## II.

### DISCUSSION

#### A. "Aggravated Felon"

Section 1226(e)(2) of the Immigration Act prohibits the release on parole of an alien convicted of an "aggravated felony" who is the subject of an exclusion proceeding. It states:

> Notwithstanding any other provision of this section, the Attorney General shall not release [an aggravated] felon from custody unless the Attorney General determines that the alien may not be deported because the condition described in section 1253(g) of this title exists.[6]

 The INS contends that the Court should not grant Mejia–Ruiz the relief he seeks because he is an "aggravated felon"

---

4. The Immigration Act provides that any alien "who [upon arrival in the United States] may not appear to [an INS] examining officer ... to be clearly and beyond a doubt entitled to land" is to be detained for examination by a special inquiry officer or immigration judge of the INS. 8 U.S.C. §§ 1225(b) and 1226(a); *see* 8 C.F.R. § 236.1. *See also Bertrand v. Sava,* 684 F.2d 204, 206 (2d Cir.1982). The immigration judge decides whether to admit formally or to exclude and deport the arriving alien. *Id.*

5. Since this issue is not before this Court, it treats as valid section 3.4.

6. Section 1253(g) relates to situations where the country from which the alien came delays or denies the acceptance of the return of the alien. The facts of this case do not indicate that the Dominican Republic has delayed or denied Mejia–Ruiz's return.

ineligible for parole and section 1253(g) is here inapplicable. Mejia–Ruiz argues that the Court should not consider the "aggravated felon" issue because it was not a ground upon which the INS assistant district director relied in denying parole. The determination of whether Mejia–Ruiz is an "aggravated felon," however, is a matter of law to be decided by the Court. *See Jenkins v. Immigration & Naturalization Serv.*, 32 F.3d 11, 13 (2d Cir.1994) (court of appeals made determination of whether petitioner was an "aggravated felon").

■ Mejia–Ruiz admits that he was convicted in 1989 in a New York State court for "the criminal sale of a controlled substance, cocaine, in the fifth degree." Affirmation Of Michael P. DiRaimondo (Mejia–Ruiz's counsel) ¶ 4. Such a conviction is a felony under New York State law. In addition, the conviction could have been punishable under section 841(a) of the Controlled Substances Act, 21 U.S.C. § 841(a), if Mejia–Ruiz had been charged federally. As a result, the conviction makes Mejia–Ruiz an "aggravated felon" as defined in 8 U.S.C. § 1101(a)(43).[7] *See Jenkins*, 32 F.3d at 14 (holding that a felony conviction in New York State court for possession of cocaine constituted an "aggravated felony" where the conviction would have also been punishable under the Controlled Substance Act, even though the crime would have only constituted a misdemeanor under federal law).

A question arises, however, regarding the retroactive effect of section 1226(e)—which took effect on November 29, 1990[8]—on Mejia–Ruiz's 1989 conviction. In *Buitrago–Cuesta v. Immigration & Naturalization Serv.*, 7 F.3d 291 (2d Cir.1993), the Second Circuit addressed an "aggravated felony" provision in the context of a waiver of deportation. The statute at issue provided that an alien who had "been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years" shall not be eligible for a waiver of deportation. *Id.* at 292.[9] The petitioner argued that the provision had no retroactive application because the statute provided that it would take effect only "*after* the date of the enactment of th[e 1990] Act." *Id.* at 294; 1990 Act § 511(a) (emphasis added). The court rejected this argument based upon the inherent nature of the statute: " '[I]t makes small sense that so substantial a stricture should not go into effect for five years from the date of enactment.' " *Buitrago–Cuesta*, 7 F.3d at 294 (*quoting Barreiro v. Immigration & Naturalization Serv.*, 989 F.2d 62, 64 (1st Cir. 1993)).

In reaching its conclusion that the statute had retroactive application, the Second Circuit considered four other "aggravating felony" statutes, each containing an enactment clause providing that the statute would apply to convictions occurring "on or after" the statute's effective date. *Buitrago–Cuesta*, 7 F.3d at 294. Each statute—8 U.S.C. §§ 1251(a)(2)(A),[10] 1326,[11] 1252(a)[12] and

7. Section 1101(a)(43) defines "aggravated felony" to include "any illicit trafficking in any controlled substance (as defined in section 802 of Title 21), including any drug trafficking crime as defined in section 924(c)(2) of Title 18." Section 924(c)(2) in turn defines "drug trafficking crime" to include "any felony punishable under the Controlled Substance Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. § 1901 et seq.)." Thus, in order to meet the definition of an aggravated felony, an offense must (a) qualify as a felony and (b) be punishable by one of the three referenced statutes. As noted above, Mejia–Ruiz's conviction satisfies these requirements.

8. Immigration Act of 1990 (the "1990 Act"), Pub.L. No. 101–649, § 504(b), 104 Stat. 5050 (Nov. 29, 1990).

9. Section 212(c) of the Immigration Act grants the Attorney General the authority to waive de-

portation of a returning lawful resident alien who temporarily proceeded abroad voluntarily and not under an order of deportation and who is returning to a lawful unrelinquished domicile of seven consecutive years. 8 U.S.C. § 1182(c). The provision at issue in *Buitrago–Cuesta* was a 1990 amendment to section 212(c). *See* 1990 Act § 511(a) (amending section 212(c) as quoted in the text).

10. Section 1251(a)(2)(A) provides that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable."

11. Section 1326 provides in pertinent part for increased penalties for an alien deported subsequent to a conviction for an aggravated felony who attempts to re-enter or is otherwise found in the United States.

12. Section 1252(a) provides in pertinent part that, in the context of deportation proceedings,

1252a [13]—also has an inherent structure lending itself to the conclusion that it should be applied retroactively, since each would have no meaningful effect "on" the date of its enactment in the absence of a conviction occurring prior to that date. As a consequence of this implicit reasoning, the Second Circuit concluded that each of these provisions should have retroactive application: "We agree ... that the inclusion of 'on' indicates that Congress intended for these provisions in the 1988 Act to apply retroactively." *Buitrago–Cuesta*, 7 F.3d at 294.

The statute at issue in the present case, section 1226(e), is conceptually comparable to the four statutes determined to have retroactive application by the Second Circuit in *Buitrago–Cuesta*. Like those statutes, the provision establishing the effective date for section 1226(e) states that it would take effect "on" the date of enactment of the statute. 1990 Act § 504(c).[14] In addition, section 1226(e)—like those statutes—would have no meaningful effect "on" the date of its enactment in the absence of a conviction occurring prior to that date because in almost no circumstance would the Attorney General be able to enforce the provision on that date. Therefore, because of the similarity between section 1226(e) and the four statutes which the Second Circuit in *Buitrago–Cuesta* has indicated would have retroactive effect, the Court holds that section 1226(e) should be applied retroactively. *See also Jenkins*, 32 F.3d at 13–14 (retroactively applying an "aggravated felony" provision which eliminated the automatic stay of deportation upon a

the Attorney General "shall take into custody any alien convicted of an aggravated felony upon release of the alien...." It also provides that "[t]he Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony ... unless the alien demonstrates ... that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings." This provision is the deportation equivalent of and is substantively similar to section 1226(e) at issue in the present case.

**13.** Section 1252a provides for "special deportation proceedings," that is, expedited proceedings, for aliens convicted of aggravated felonies. (The *Buitrago–Cuesta* Court does not specifically cite

petitioner's appeal). *But see Alvarez–Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir.1991) (stating that section 1226(e) should not be given retroactive effect, but nevertheless permitting the continued detention of an alien based upon convictions which occurred prior to section 1226(e)'s enactment date), *cert. denied*, —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

Even if section 1226(e) did not have retroactive effect, however, Mejia–Ruiz would still not be entitled to the relief he seeks.

## B. *Due Process Hearing*

Mejia–Ruiz belatedly bases his contention that he is entitled to a due process parole hearing before the INS assistant district director solely upon Judge Glasser's well-reasoned decision in *Hamaya v. McElroy*, 797 F.Supp. 186 (E.D.N.Y.1991). In *Hamaya*, Judge Glasser held that a lawful permanent resident alien seeking re-entry into the United States after a temporary departure was entitled to a due process hearing on the question of whether he should be paroled during the pendency of his exclusion proceeding. *Id.* at 191–94. Judge Glasser, however, carefully delineated the limits of his holding:

In order to avoid confusion, the court emphasizes that its decision does not bestow the right to a full parole hearing on every alien seeking admission to the United States. As the foregoing discussion ... makes clear, today the court decides only that under the circumstances, Hamaya's

to 8 U.S.C. § 1252a; rather, it cites section 7347 of the Anti-Drug Abuse Act of 1988 (the "1988 Act"), Pub.L. No. 100–690, § 7347, 102 Stat. 4472 (1988), which is codified at 8 U.S.C. § 1252a. *See Buitrago–Cuesta*, 7 F.3d at 294. For the sake of completeness, the Court has nevertheless considered this statute despite its lack of parallel citation to the United States Code.)

**14.** Unlike the statutes addressed by the Second Circuit, the provision establishing the effective date for section 1226(e) does not state that it will apply to convictions occurring "on or after" the statute's enactment date. The Court views this difference as immaterial to its determination that section 1226(e) should be given retroactive application.

status as a *returning resident alien* entitles him to a full hearing on the issue of parole into the country.

*Id.* at 193–94 (emphasis added). Whether Mejia–Ruiz is entitled to a due process hearing thus turns on whether he was a returning resident alien at the time he sought re-entry into the United States.

 The Court concludes that, unlike Hamaya, Mejia–Ruiz was not a returning resident alien at that time. When Mejia–Ruiz voluntarily left the country, he was subject to a valid order of deportation. The Immigration Act provides that one who voluntarily leaves the United States while under an order of deportation is to be considered "deported." 8 U.S.C. § 1101(g) ("any alien ordered deported ... who has left the United States, shall be considered to have been deported in pursuance of law"). Further, it provides that the order of deportation "shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order." *Id.* § 1105a(c). The effect of these statutes is to render Mejia–Ruiz "deported" at the time he left the United States and that this determination is *final*.[15]

The fact that Mejia–Ruiz had a pending administrative appeal before the BIA at the time he voluntarily left the United States provides him with no sanctuary. As noted above, 8 C.F.R. § 3.4 provides that "[d]eparture from the United States of a person who is the subject [of] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal, and the initial decision in the case *shall be final to the same*

---

15. *Cf. Joehar v. Immigration & Naturalization Serv.*, 957 F.2d 887, 889 (D.C.Cir.1991) ("That Joehar has lived in the United States for 16 years, left the country voluntarily for a mere three-week visit to Canada, and clearly had no intention of abandoning his case thereby, all may emphasize the harshness of [8 U.S.C. § 1105a(c)], but cannot soften its preclusive effect").

16. As provided in 8 U.S.C. § 1101(a)(13):
The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence

---

*extent as though no appeal had been taken."* (Emphasis added). In *United States v. Blaize*, 959 F.2d 850 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992), the Ninth Circuit, interpreting this statutory and regulatory authority, correctly concluded:

This case presents a single straightforward issue: If a person who is under a deportation order from which he has appealed voluntarily leaves the United States, has he been deported? We answer this question *yes* . . . .

*Id.* at 851 (emphasis added).

 Thus, at the time Mejia–Ruiz left the United States, he "deported" himself. Upon his return a month later, he was no longer a lawful resident alien. Consequently, he is not entitled to a *Hamaya* due process parole hearing. *See Correa v. Thornburgh*, 901 F.2d 1166, 1171 n. 5 (2d Cir.1990) ("Other than protection against gross physical abuse, the alien seeking initial entry [16] appears to have little or no constitutional due process protection. Rights in such circumstances appear to be largely statutorily derived, although some constitutional due process protection may be available to the *resident* alien seeking re-entry depending on the length of her absence") (footnote and emphasis added; citations omitted).

## C. *Abuse Of Discretion*

 While non-resident aliens have sharply circumscribed Constitutional protections, they nonetheless have an implicit statutory right to seek parole from exclusion proceedings since the Immigration Act authorizes the Attorney General to parole such aliens:

in the United States shall not be regarded as making an entry ... for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure ... was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure ... was occasioned by *deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.*
(First emphasis in original; subsequent emphasis added.)

"The Attorney General may ... *in his discretion* parole into the United States temporarily under such conditions as he may prescribe for *emergent reasons* or for *reasons deemed strictly in the public interest* any alien applying for admission." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The Attorney General has delegated responsibility for making such decisions to the respective INS district directors. 8 C.F.R. §§ 100.2(e) and 212.5.[17]

■ Consistent with the right to seek parole is the right to have a fair and impartial determination of the parole application; in other words, the Attorney General (or the INS district director, as designee) must not abuse his or her discretion in determining whether to grant parole. *Bertrand v. Sava,* 684 F.2d 204 (2d Cir.1982). The Second Circuit in *Bertrand* addressed the standard for measuring an abuse-of-discretion challenge to the denial of a parole application:

> [The Attorney General's] decision may *not* be challenged on the ground that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors relevant to the risk of abscondence and too little to others. Indeed, section 1182(d)(5) permits the Attorney General to deny parole to all or to certain groups of unadmitted aliens on the ground that he finds *no emergent or public interest reasons justifying their release on parole....* [T]he Attorney General's exercise of his broad discretionary power must be viewed at the outset as *presumptively legitimate and bona fide* in the absence of *strong proof* to the contrary. *The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one*

and rests at all times on the unadmitted alien challenging denial of parole.

*Id.* at 212–13 (emphasis added). In addition, the *Bertrand* court cautioned district courts not to substitute their judgment for that of the INS district directors when reviewing decisions denying parole. *Id.* at 214, 216–17 ("A review of the record convinces us that on several occasions the trial court improperly substituted its own judgment and policy preferences for those of [the INS district director]").

■ While an INS district director is "not required to give petitioners a detailed explanation as to the reasons for the parole denials," *Tobia v. Sava,* 556 F.Supp. 325, 327 (S.D.N.Y.1982), a decision denying parole should contain, at minimum, sufficient information supporting the denial as to permit a reasoned evaluation of whether an abuse of discretion occurred. *See Marczak v. Greene,* 971 F.2d 510, 519 (10th Cir.1992) (The INS district director "was required to give facially legitimate and *bona fide* reasons, factually supportable, for finding detention to be in the public interest"); *Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992) (in the context of an appeal from the denial of a stay of deportation, the Second Circuit, after citing *Bertrand,* stated: "When faced with cursory, summary or conclusory statements from the BIA, we cannot presume anything other than ... an abuse of discretion, since 'the BIA's denial of relief can be affirmed only on the basis articulated in the decision ... and we cannot assume that the BIA considered factors that it failed to mention in its decision' ") (*quoting Mattis v. Immigration & Naturalization Serv.,* 774 F.2d 965, 967 (9th Cir. 1985)).[18]

---

17. Section 212.5 provides that the INS district directors should consider a number of factors in determining whether to release an alien on parole. In substance, the statute provides that

 (1) serious medical conditions may constitute an "emergent reason" justifying parole;

 (2) one of the following groups may constitute an exception "strictly in the public interest" justifying parole: (i) pregnant women; (ii) juveniles; (iii) aliens with close family relatives in the United States who are eligible to file, and have filed, a visa petition on behalf of the detainee; (iv) witnesses in proceedings; and (v) aliens whose continued detention is not in

the public interest as determined by the district director; and

 (3) parole may be justified if an alien is subject to and needed for prosecution.

8 C.F.R. § 212.5.

18. *See also Mattis,* 774 F.2d at 968 ("The BIA failed to give a reasoned explanation for the exercise of its decision to deny the motion to reopen" a deportation proceeding); *Li v. Greene,* 767 F.Supp. 1087, 1091 (D.Colo.1991) ("The district director failed to indicate whether he considered these factors"); *Caporali v. Whelan,* 582 F.Supp. 217, 220 (D.Mass.1984) ("[T]he record is

In the present case, the INS assistant district director's decision satisfactorily provided Mejia–Ruiz with reasons for the parole denial and the factors upon which she relied. In the first instance, she expressly stated that, not only did she consider the letter from Mejia–Ruiz's counsel requesting parole,[19] but also his entire INS record—a statement confirmed by the fact that the INS decision contains factual information absent from the letter requesting parole. INS Decision at 2. Further, the INS assistant district director stated that Mejia–Ruiz did not present "emergent reasons" or "reasons strictly in the public interest" justifying parole because he had failed to present any evidence that he satisfied any of the criteria outlined in section 212.5. *Id.* at 1. Finally, the INS assistant district director concluded that Mejia–Ruiz posed a risk of abscondence because of, *inter alia,* his criminal conviction and the existence of both an order of deportation and an order of exclusion (*id.* at 2), a conclusion this Court cannot deem "irrational" or in "bad faith." *See Bruce v. Slattery,* 781 F.Supp. 963, 968–69 (S.D.N.Y.1991) ("Bruce's incentive to abscond is even greater now than when he made his first parole request ... because he is now subject to a final order of exclusion").

Faced with the INS assistant district director's decision which the Court must, under *Bertrand,* presume is legitimate and *bona fide* in the absence of "strong proof" to the contrary, and with *Bertrand* 's admonition that the Court not substitute its judgment for that of the INS assistant district director, the Court concludes that Mejia–Ruiz has failed under *Bertrand* to sustain his heavy burden of establishing that the INS assistant director exercised her discretion irrationally or in bad faith.

\* \* \*

so opaque that I am unable to engage in judicial review of respondent's decision to detain petitioner without bail").

19. As noted above, Mejia–Ruiz applied for parole through a letter sent by his attorney on July 27, 1994. Regarding his assertion that he should receive parole because he has family members lawfully in the United States, the Court notes that "the mere existence of family relationships is

For all the foregoing reasons, the *habeas corpus* petition is denied.

**SO ORDERED.**

insufficient to mandate parole." *Ledesma–Valdes v. Sava,* 604 F.Supp. 675, 681 (S.D.N.Y.1985). Instead, "[t]he close family relative must be eligible to file and *have filed* a visa petition on behalf of the detainee." *Id.* (emphasis added). Counsel for Mejia–Ruiz admitted during oral argument that none of Mejia–Ruiz's family members have made any such filings.