**Wilhelm SCHOENMETZ, Petitioner,**

v.

**John J. INGHAM, District Director,
Immigration and Naturalization
Service, Respondents.**

No. 96–CV–461A.

United States District Court,
W.D. New York.

Sept. 19, 1996.

Robert D. Kolken, Sacks and Kolken, Buffalo, NY, for Petitioner.

James W. Grable, Special Assistant U.S. Attorney, Immigration & Naturalization Service, Buffalo, NY, for Respondent.

## DECISION AND ORDER

ARCARA, District Judge.

### *INTRODUCTION*

On July 12, 1996, petitioner, Wilhelm Schoenmetz, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking review of a decision by respondent, John J. Ingham, District Director, Immigration and Naturalization Service ("INS"), denying petitioner's request for parole pending completion of exclusion proceedings against him. Petitioner requests an order from this Court directing his immediate release on parole. Both parties were provided with an opportunity to brief their respective positions and oral argument was held on August 22, 1996. After reviewing the submissions of the parties and hearing argument from counsel, the Court denies petitioner's writ of habeas corpus and dismisses this action.

### *BACKGROUND*

Petitioner, a native and citizen of Germany, initially entered the United States as a visitor for pleasure on January 11, 1973. He remained in the United States longer than authorized, thereby becoming deportable for that reason. On December 21, 1973, the INS commenced a deportation proceeding against petitioner and charged him with being deportable for having remained in the United States longer than authorized.

On January 21, 1974, petitioner was convicted, after pleading guilty, in the United States District Court for the Eastern District of Michigan for the offense of possession of a controlled substance, *i.e.*, marijuana, in violation of 21 U.S.C. § 844(a). Petitioner was sentenced to probation for a period of two years.

On February 25, 1974, an immigration judge ("IJ") found petitioner to be deportable as charged during a deportation hearing and ordered him deported from the United States to West Germany. The basis for deportation was the fact that petitioner remained in the United States longer than authorized and was not based on his drug conviction. In his decision, however, the IJ did find that petitioner was statutorily ineligible for voluntary departure in lieu of deportation because of the drug conviction.

Petitioner unsuccessfully appealed the deportation order to the Board of Immigration Appeals ("BIA"). He thereafter unsuccessfully pursued judicial review of the deportation order in the Sixth Circuit Court of Appeals.

In the criminal case, petitioner filed a motion to set aside his plea of guilty contending that his plea was made without effective assistance of counsel. He claimed that counsel did not inform him of the immigration consequences of his guilty plea. The sentencing judge denied petitioner's motion and the Sixth Circuit dismissed petitioner's appeal from that denial. Petitioner subsequently made another unsuccessful motion to vacate the conviction on the same grounds.

In his deportation proceeding, petitioner unsuccessfully sought a stay of deportation from the INS on two separate occasions in February 1976, to permit petitioner to seek United States Supreme Court review of the deportation order and to pursue efforts to obtain a court order vacating his drug conviction. Both stay applications were denied. A petition for habeas corpus relief filed in response to the first stay denial was dismissed by the Sixth Circuit. On February 25, 1976, petitioner was deported from the United States to Germany under a warrant of deportation.

On June 20, 1996, petitioner sought entry into the United States at the Lewiston–Queenston Bridge port of entry at Lewiston, New York by claiming to be a citizen of the United States. In primary and secondary inspection, petitioner contended that he was born in New York City. He also produced several documents in support of his claim to United States citizenship. Record checks conducted by the INS disclosed that petitioner was identified in INS records as a previously deportable alien. Petitioner eventually

admitted that he was an alien and that he was previously deported from the United States in 1976. He also admitted that he had been living and working in the United States without authority since 1983.

On the basis of this information, the INS commenced an exclusion proceeding against petitioner. He was charged as being inadmissible to the United States as an alien who attempted to enter the United States by fraud and as an immigrant not in possession of an immigrant visa or other required entry document. Petitioner was detained by the INS on June 20, 1996, pending resolution of the exclusion proceedings. The INS subsequently discovered that petitioner had previously been convicted in the United States for possession of marijuana.

In a letter request dated June 26, 1996, petitioner's counsel in the exclusion proceeding requested that the INS grant petitioner indefinite parole so that he could: (1) marry his fiancée, a citizen of the United States, and thereafter pursue an application for adjustment of status to that of a lawful permanent resident alien on the basis of that marriage; and (2) continue to support and visit his two United States citizen children from a prior marriage. The parole request explained that, on June 20, 1996, petitioner was employed as a project engineer for a company located in Michigan, and was traveling on business with his employer from Michigan to Tonawanda, New York via Canada. According to petitioner, his employer was unaware of his illegal immigration status and he was afraid to inform the employer of it. Petitioner offers this reason for initially misrepresenting his citizenship status to INS authorities upon his attempt to reenter the United States.

In petitioner's parole request, petitioner's counsel indicated that, after being deported in 1976, petitioner returned to the United States in 1977 on a visitor's visa. Counsel also indicated that petitioner made another entry into the United States in the Fall of

1982 on a visitor's visa and that he lived in the United States thereafter until the present time. Counsel further indicated that petitioner returned to Germany in 1991 for several months and was readmitted to the United States under a visa waiver procedure.[1] Petitioner's counsel did not mention petitioner's previous drug conviction in his initial parole request.

Counsel for petitioner made a second parole request in a letter dated July 1, 1996, in which he again requested that petitioner be paroled indefinitely to permit him to marry his fiancée and to continue employment in the United States to support his two United States citizen children from a prior marriage. In the second parole request, counsel indicated that he learned after the first parole request that petitioner had previously been convicted of marijuana possession in the United States.

Petitioner's counsel made a third parole request in a letter dated July 12, 1996. In the third parole request, petitioner sought temporary parole for a period of 90 days to enable counsel to obtain copies of his entire drug conviction record and those portions of the INS file relating to petitioner that would be deemed releasable by INS to counsel.[2]

On July 12, 1996, petitioner commenced the instant action for a writ of habeas corpus. The parties appeared before the Court on July 15, 1996. At that time, counsel for the INS furnished petitioner's counsel and the Court with a letter dated July 15, 1996, in which the INS denied petitioner's third parole request. On July 17, 1996, the INS issued a superseding decision denying petitioner's parole request. It is the July 17, 1996, denial of parole that is to be reviewed by the Court in this case.

On July 18 and 19, 1996, an exclusion hearing was conducted before an IJ in Buffalo, New York. At the hearing, petitioner testified that he was convicted for possession of marijuana in Michigan in 1974 and was deported from the United States in 1976.

---

1. According to the INS, none of these entries are recorded in INS records.

2. While petitioner did not mention any other reasons for requesting parole in his third parole request, it seems clear that petitioner's request was also based on his desire to marry his fiancée and support his children, as he had stated in his previous parole requests.

Petitioner also testified that he has lived and worked in Michigan from 1983 until the present. He further testified that he made trips outside the United States in 1991 and 1995. Counsel for petitioner indicated that petitioner's German passport has been missing for years.

At the conclusion of the hearing, the IJ ordered petitioner excluded and deported from the United States as an alien who attempted to enter the United States by fraud and as an alien who was inadmissible as an immigrant not in possession of an immigrant visa or other required entry document. The IJ's exclusion order was not based on petitioner's prior drug conviction.

The INS filed a motion with the IJ requesting that the IJ add as a grounds for exclusion petitioner's drug conviction. In an order dated August 5, 1996, the IJ denied the INS's motion.

Petitioner has appealed the IJ's order of exclusion to the BIA. At oral argument, counsel for the INS stated that it is the INS's intention to ask the BIA to review also the IJ's refusal to add petitioner's drug conviction as a ground for exclusion.

## DISCUSSION

Under 8 U.S.C. § 1182(d)(5)(A), an alien subject to exclusion may be provisionally admitted into the United States:

> The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States ...

The Attorney General has delegated responsibility for making such decisions to the respective INS district directors pursuant to 8 C.F.R. §§ 100.2(d)(2)(i) and 212.5. Section 212.5(a) narrowly defines the terms of the statute:

> In determining whether or not aliens who have been or are detained ... will be paroled out of detention, the district director should consider the following:
>
> (1) The parole of aliens who have serious medical conditions in which continued detention would not be appropriate would generally be justified by "emergent reasons";
>
> (2) The parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest," provided that the aliens present neither a security risk nor a risk of absconding:
>
> (i) Women who have been medically certified as pregnant;
>
> (ii) Aliens who are defined as juveniles ...;
>
> (iii) Aliens who have close family relatives in the United States (parent, spouse, children, or siblings who are United States citizens or lawful permanent resident aliens) who are eligible to file, and have filed, a visa petition on behalf of the detainee;
>
> (iv) Aliens who will be witnesses in proceedings being or to be, conducted by judicial, administrative, or legislative bodies in the United States;
>
> (v) Aliens whose continued detention is not in the public interest as determined by the district director.

An INS district director's denial of parole is subject to review by the federal district court. See Bertrand v. Sava, 684 F.2d 204, 210–11 (2d Cir.1982); Mersereau v. Ingham, 875 F.Supp. 148, 152 (W.D.N.Y. 1995). The scope of such review, however, is narrow. The district director's decision must be upheld as long as he has articulated some individualized facially legitimate and bona fide reason for denying parole and there exists in the record some factual basis for that decision. See Bertrand, 684 F.2d at 212; see also Marczak v. Greene, 971 F.2d 510, 517–18 (10th Cir.1992); Azizi v. Thornburgh, 908 F.2d 1130, 1133 n. 2 (2d Cir.1990) ("facially legitimate and bona fide reason" standard equivalent to "rationale basis" test); Amanullah v. Nelson, 811 F.2d 1, 10–11 (1st Cir.1987); Garcia–Mir v. Smith, 766 F.2d 1478, 1485 (11th Cir.1985), cert. denied, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986).

In *Bertrand,* the Second Circuit addressed the standard for challenging the denial of a parole application:

> [The INS district director's] decision may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors relevant to the risk of abscondence and too little to others. Indeed, section 1182(d)(5) permits the Attorney General to deny parole to all or to certain groups of unadmitted aliens on the ground that he finds no emergent or public interest reasons justifying their release on parole.... [T]he [INS district director's] exercise of his broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole.

*Bertrand,* 684 F.2d at 212–13 (citations omitted). In addition, the *Bertrand* court cautioned district courts not to substitute their judgment for that of the INS district director's when reviewing decisions denying parole. *Id.* at 214–17 ("A review of the record convinces us that on several occasions the trial court improperly substituted its own judgment and policy preferences for those of [the INS district director].").

■ In the present case, the Court finds that the INS district director's decision of July 17, 1996, provided petitioner with a facially legitimate and bona fide reason for denying parole, *i.e.,* that petitioner presents a risk of absconding if released on parole. After reviewing and discussing petitioner's immigration history, petitioner's prior drug conviction, and the reasons petitioner was asserting for requesting parole, the district director concluded that:

> The request for parole for 90 days is deemed to be an attempt to obtain release

from custody indefinitely, without regard for the conditions that would be applicable to the grant of the requested parole. * * * Careful consideration of your immigration history suggests that you would not comply with any parole conditions imposed under 8 C.F.R. 212.5(c). In light of your immigration history, it is deemed unlikely that you would surrender yourself to the custody of the INS after the expiration of 90 days or any other period of authorized temporary parole, prior to the conclusion of your exclusion proceeding currently pending in Immigration Court. Furthermore, your continued illegal presence in the United States since 1973 as documented in an application for employment with Nagle Precision Inc., in conjunction with your impending marriage to Mary Lou Lagler, indicates that it is your intention to remain in the United States indefinitely or permanently without regard to the terms of any parole authorization. Accordingly, your request for parole from custody is denied.

■ The Court interprets the district director's decision as a determination that petitioner presents a risk of absconding. Although the district director fails to state so expressly, it is certainly reasonable to construe his finding that petitioner will not surrender himself to the custody of the INS upon the expiration of his parole as a determination that petitioner is likely to abscond in order to remain in this country.[3] A risk of absconding is a facially legitimate and bona fide reason for denying parole under 8 C.F.R. § 212.5(a)(2). *See Pammy v. Schiltgen,* No. C 96–0287, 1996 WL 45202 (N.D.Cal. January 30, 1996); *Mejia–Ruiz v. INS,* 871 F.Supp. 159, 165–66 (E.D.N.Y. 1994); *Hamaya v. McElroy,* 797 F.Supp. 186, 193 (E.D.N.Y.1992) (" 'a risk of absconding' is a factor which conclusively bars the grant of parole"); *Micovic v. McElroy,* 790 F.Supp. 75, 76 (S.D.N.Y.1992); *Bruce v. Slattery,* 781 F.Supp. 963, 968–69 (S.D.N.Y.1991).

---

**3.** The term "risk of absconding" is not defined in 8 C.F.R. § 212.5(a). It would seem clear, however, that the term does not only refer to a risk that the detainee will flee the country; indeed, the detainee is in fact trying to enter and remain in the country. A "risk of absconding" in this context also means a risk that the detainee will "lose himself" within the United States so that the INS cannot locate and deport him if or when a final order of exclusion and deportation is issued.

■ Further, the Court finds that the district director's determination that petitioner presents a risk of absconding is supported by facts in the record. Petitioner's prior requests for indefinite parole and his impending marriage to his fiancée tend to show that it is petitioner's intention to stay in the United States indefinitely. In addition, petitioner's immigration history tends to show that he is willing to do whatever is necessary, lawful or unlawful, to remain in this country. Petitioner was deported in 1976 for remaining in the United States longer than authorized. He has admitted leaving and returning to the United States on several occasions since 1976, and living in the United States illegally since 1983. In light of petitioner's deportation in 1976, none of petitioner's claimed post–1976 entries would have been lawful under the immigration laws. This long history of violating the immigration laws, when combined with petitioner's prior drug conviction, *see Mason v. Brooks,* 862 F.2d 190, 195 (9th Cir.1988) (the fact that an alien is excludable because he was convicted of possession of a controlled substance is a facially legitimate and bona fide reason to deny him parole), supports the district director's determination that petitioner would not obey the legal restrictions placed on him pursuant to the parole and that he would not surrender himself when instructed to do so.

In denying parole, the district director also considered the likelihood that petitioner would be ordered excluded following the exclusion proceedings. According to the district director, because of petitioner's prior drug conviction, there appears to be no form of relief available to allow his entry as an immigrant.[4] Thus, it appears more likely than not that the exclusion proceedings will ultimately result in a final order of exclusion against petitioner.

■ Petitioner argues that it was improper for the district director to use petitioner's apparent excludability as a basis for denying parole. In support of his position, he cites to

*Hamaya v. McElroy,* 797 F.Supp. 186, 192–93 (E.D.N.Y.1992). In *Hamaya,* the court held that a detained alien's apparent excludability should not be a factor considered when determining whether the alien presents a risk of absconding. *See also Mersereau,* 875 F.Supp. at 153. The district court's holding in *Hamaya,* however, appears to be contrary to the Second Circuit's holding in *Bertrand.* In *Bertrand,* the Second Circuit stated that:

> The fact that the petitioners are unlikely to succeed on their immigration applications also suggests that they pose [a risk of absconding] if paroled; the more likely it is that an alien's application will succeed, the less likely it is that he will abscond while on parole and thereby risk his long term chances of legal admission to the United States.... [A]n alien likely to achieve the goal of lawful entry into the United States is less likely to abscond than one whose prospects are more doubtful.

*Bertrand,* 684 F.2d at 217 n. 16. Thus, the Court finds that, under *Bertrand,* an INS district director may properly consider the likelihood that an alien will ultimately be excluded as a factor in determining whether the alien presents a risk of absconding.

The Court notes that the district director's determination that petitioner presents a risk of absconding is now also supported by the fact that, since the time of the parole denial, the exclusion hearing has been completed and the IJ has ordered that petitioner be excluded. Although petitioner is appealing to the BIA, the issuance of the exclusion order by the IJ certainly adds to any incentive on the part of the petitioner to abscond in order to avoid being deported. *See Mejia–Ruiz,* 871 F.Supp. at 166; *Bruce,* 781 F.Supp. at 968–69; *Tobia v. Sava,* 556 F.Supp. 325, 326 n. 2 (S.D.N.Y.1982).

In sum, all of these factors, when taken together, certainly provide a rationale basis for the district director's determination that petitioner presents a risk of absconding. Whether the Court would arrive at the same conclusion based on this record is irrelevant.

---

4. While petitioner's drug conviction is not presently a ground for exclusion before the IJ and the BIA, the INS will no doubt begin new exclusion proceedings against petitioner based on his prior drug conviction, if petitioner is found not excludable on the grounds already asserted in the current exclusion proceeding.

This Court is not authorized to conduct its own factual inquiry to determine whether petitioner in fact presents a risk of absconding. The Court's only role is to determine whether the district director has provided a facially legitimate and bona fide reason for denying parole and has not acted irrationally or in bad faith.[5] *See Bertrand,* 684 F.2d at 212–13; *Mejia–Ruiz,* 871 F.Supp. at 166; *Pammy,* 1996 WL 45202 at *3.

### CONCLUSION

For the reasons stated, petitioner's application for an order directing his release on parole is denied and the petition is dismissed. The Clerk of Court is hereby ordered to enter judgment in favor of the respondent and to take all steps necessary to close the case.

SO ORDERED.

---

**5.** There has been no allegation or evidence in this case that the INS has acted in bad faith.